UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff/Respondent, | ) | Criminal Action No. 5: 22-042-DCR |
| | ) | and |
| V. | ) | Civil Action No. 5: 23-292-DCR |
| | ) | |
| EYRON J. SMITH | ) | |
| | ) | **MEMORANDUM ORDER** |
| Defendant/Movant. | ) | **AND OPINION** |
| | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Defendant Eyron Smith is serving a sentence of 100 months' incarceration after pleading guilty to possessing 40 grams or more of fentanyl with the intent to distribute it and being a felon in possession of a firearm.  Proceeding *pro se*, Smith has filed a motion and a supplementary motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255(a).  He seeks relief on a variety of grounds.  [Record Nos. 39 and 49]

Smith's motions were referred to United States Magistrate Judge Hanly A. Ingram, who issued a Recommend Disposition on July 2, 2024.  [Record No. 65]  Magistrate Judge Ingram recommends that the undersigned deny Smith's motions because he has failed to establish any errors of constitutional magnitude.  Except as noted below, and after conducting a *de novo* review, the Court will adopt the Magistrate Judge's recommendations.  However, the Court declines to adopt the recommendation regarding whether a Certificate of Appealability should issue regarding Smith's claimed Second Amendment violation.

- 1 -

## I.

Officers searched Smith's vehicle during a traffic stop pursuant to the automobile exception of the Fourth Amendment.  During the stop, they located "a Ruger pistol loaded with [sixteen] rounds and a Ruger revolver," along with several bags of suspected drugs.  [Record No. 23]  Smith later "admitted to the possession of the drugs and fentanyl … [and] admitted that he was a convicted felon and could not possess a firearm." *Id*.  Smith also admitted "that he knew he was previously convicted of . . . a felony offense punishable by imprisonment of one year or more." *Id*.

Following indictment, Smith moved to enter a guilty plea to Counts 1 and 2.  During the re-arraignment hearing held on the motion, Smith confirmed that he understood the terms of his written plea agreement which had been negotiated with the government and he testified that had reviewed it with his attorney. *Id*.  Smith further acknowledged that the plea agreement did not contain any other promises that induced him to plead guilty. *Id*. at 12-13.

## II.

Smith has asserted five grounds for relief.  Under 28 U.S.C. § 2255, Smith bears the burden of proving the allegations by a preponderance of the evidence. *McQueen v. United States*, 58 F. App'x 73, 76 (6th Cir. 2003).

### The Fourth Amendment Claim

Smith's section 2255 motion alleges a Fourth Amendment violation.  However, as Magistrate Judge Ingram correctly observed, such a claim is not cognizable under section 2255. *Ray v. United States*, 721 F.3d 758, 762 (6th Cir. 2013).

### The Ineffective Assistance of Counsel Claims

Smith makes four claims of ineffective assistance of counsel. To prevail on an ineffective assistance claim, a movant must show that counsel's performance was constitutionally deficient and that he was prejudiced by the deficient performance. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). A defendant must demonstrate that counsel's representation fell below an objective standard of reasonableness to establish that the performance was constitutionally deficient. *Id*. at 688. To prove prejudice, a movant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome," which "requires a substantial . . . likelihood of a different result," "not just [a] conceivable" one. *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011).

Generally, courts must be highly deferential in evaluating counsel's performance because there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at. at 688-90. A defendant seeking to establish ineffective assistance of counsel must prove his claim by a preponderance of the evidence. *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006).

Smith first claims that his counsel provided ineffective assistance by failing to challenge the search of his vehicle under the Fourth Amendment. To establish deficient performance in this context, a defendant must demonstrate that his Fourth Amendment claim has merit. *Ray*, *supra* at 762. Smith asserts that the search in issue violated the Fourth Amendment because law enforcement did not have a warrant. But as Magistrate Judge Ingram points out, "it is blackletter law that the police can lawfully search a car without a warrant if

they have probable cause." *Hernandez v. Boles*, 949 F.3d 251, 259 (6th Cir. 2020).  But Smith does not allege that police lacked probable cause to search his car and he has not established that his attorney performed deficiently by not challenging this search.

Next, Smith alleges that that his attorney did not correctly advise him regarding the criminal history category to which he would be assigned at sentencing.  However, as Magistrate Judge Ingram noted, Smith's assertion that defense counsel promised that he would be placed in Criminal History Category IV is refuted by Smith's plea agreement and his acknowledgment during the re-arraignment proceedings.  [Record No. 65]  Smith's plea agreement states that "no agreement exists about the Defendant's criminal history category pursuant to U.S.S.G. Chapter 4."  *Id*.  And during the re-arraignment hearing, Smith acknowledged that no promises were made that "caused [him] either to sign [the plea agreement] or indicate that [he] wished to enter a guilty plea in the case."  [Record No. 57]

Relief under section 2255 is improper "if the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact."  *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999).  In short, Smith has not demonstrated that his counsel provided deficient representation regarding this claim.

Smith's third argument is that his counsel was unprepared for his sentencing hearing. However, he does not explain how this alleged "unpreparedness" caused prejudice.  In the absence an explanation of how further or different preparation would have created a reasonable probability of a more favorable outcome, Smith has failed to establish a cognizable claim.  *See Glover v. United States*, 531 U.S. 198, 203-04 (2001).  He is not entitled to relief based on a general allegation that his attorney was broadly unprepared.

Finally, Smith contends that his attorney was ineffective for failing to advise him of the rights that he would waive by pleading guilty.  However, as Magistrate Judge Ingram observed, the Court informed Smith of the rights he would be waiving at the time of the re-arraignment hearing.  At that time, Smith acknowledged the waivers that would occur if he entered a guilty plea rather than proceed to trial.  Again, Smith fails to demonstrate deficient performance by his attorney.

### The Validity of Guilty Plea Claim

Smith also challenges the validity of his guilty plea.  A plea can be made knowingly even "if the defendant did not correctly assess every relevant factor entering into his decision." *Brady v. United States*, 397 U.S. 742, 757 (1970).  But for a plea to be knowing and voluntary, the defendant must receive "real notice of the true nature of the charge against him."  *Bousley v. United States*, 523 U.S. 614, 618 (1998).  Additionally, he must have understood "the essential elements of the crime with which he [is] charged."  *Id*. at 618.

As noted above, Smith testified under oath during the re-arraignment hearing that he reviewed the plea agreement and understood the essential elements of the offenses of conviction.  As Magistrate Judge Ingram concluded, "Smith had real notice of the true nature of the charges against him, so [this] claim . . . is without merit."  [Record No. 65] Additionally, "Smith confirmed . . . that no promises or threats were made to induce him to plead guilty other than the promises made in the plea agreement."  *Id*.  Smith's plea was made knowingly and voluntarily.

### The *Brady* Claims

Next, Smith argues that the government's attorney committed constitutional violations by failing to disclose exculpatory evidence as required by *Brady v. Maryland*, 373 U.S. 83, 87

(1963).  Put simply, *Brady* requires prosecutors to disclose exculpatory and material evidence to a criminal defendant.[1]  Whether prosecutors must disclose such evidence *before* a defendant pleads guilty remains an open question in this circuit.  *Robertson v. Lucas*, 753 F.3d 606, 621 (6th Cir. 2014).  However, the Tenth Circuit has held that a defendant has a right to exculpatory evidence before entering a guilty plea, concluding that such evidence is "critical information" that a defendant must have before entering a "knowing" guilty plea.  *United States v. Ohiri*, 133 F. App'x 555, 562 (10th Cir. 2005).  But for such evidence to be material, the evidence must create "a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different."  *Kyles v. Whitley*, 514 U.S. 419, 435 (1995).  Materiality is determined by reviewing the totality of the evidence not disclosed.  *Id.* at 436.

And as a general matter, the United States has not suppressed evidence when a defendant is on notice that the evidence exists.  *Hughbanks v. Hudson*, 2 F.4th 527, 537 (6th Cir. 2021).  As a result, "there is no *Brady* violation if the defendant knew or should have known the essential facts permitting him to take advantage of the information in question or if the information was available to him from another source."  *Carter v. Bell*, 218 F.3d 581, 601 (6th Cir. 2000).

Smith argues that the prosecution's failure to disclose a search warrant for his vehicle constitutes a *Brady* violation.  The United States indeed obtained a warrant to track Smith's vehicle with GPS technology.  But as Magistrate Judge Ingram concluded, "Smith has not

---

[1]    Impeachment evidence is also covered by *Brady's* requirements.  *Strickler v. Greene*, 527 U.S. 263, 280 (1999).  However, such evidence is not required to be disclosed before a defendant chooses to plead guilty.  *United States v. Ruiz*, 536 U.S. 622, 633 (2002).

established that the search warrant that the United States (allegedly) failed to disclose amounts to material evidence because [Smith] has never established such a warrant existed or what it contained." [Record No. 65]  As mentioned previously, Smith's challenge of the search itself is without merit based on the automobile exception to the Fourth Amendment's warrant requirement.  Smith simply has not established a *Brady* violation occurred on this basis.

Separately, Smith alleges that the United States failed to disclose that the seized substances that formed the basis for the drug quantity conviction under 21 U.S.C. § 841(a)(2) were found to not have contained controlled substances.  According to the record, "three controlled buys were made prior to the search of Smith's vehicle." [Record No. 65]  But as Magistrate Judge Ingram noted, "the plea agreement makes clear that the drugs supporting the federal conviction were found *in his vehicle*."  *Id*.  Additionally, "Smith admits that the evidence from the controlled buys and related testing results were disclosed to him during his related state case (21-F-2949), which was disposed of in Fayette Circuit Court" prior to his indictment on his federal offenses.  *Id*.  The record establishes that Smith had notice of the evidence's existence and access to it, thereby precluding any non-disclosure by the United States from constituting a constitutional error under *Brady*.  *See Carter*, 218 F.3d at 601.

### The Second Amendment Claim

Smith also argues that his conviction under 18 U.S.C.  § 922(g)(1) should be vacated because it violates the Second Amendment.  The United States counters that this claim is meritless and additionally argues it was "waived by Smith's plea agreement." [Record No. 65] The Second Amendment provides that "[a] well-regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. Amend. II.  In *District of Columbia v. Heller*, the Supreme Court identified the

"core" of the Second Amendment as "the right of law-abiding, responsible citizens to use arms in defense of hearth and home."  554 U.S. 570, 635 (2008).

In *Heller*, the Court made clear that "the right secured by the Second Amendment is not unlimited."  *Id*. at 626.  That led us to *Bruen* which involved a New York law criminalizing possession of a firearm without a license, both inside and outside the home.  An individual could obtain a license for a firearm, but they had to demonstrate a specific need for self-defense.  *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 17 (2022).

In *Bruen*, the Supreme Court concluded that New York's licensing plan violated the Constitution and clarified that the Second Amendment protects an individual's right to carry a handgun for self-defense both inside and outside the home.  *Id*.  In the decision's aftermath, when evaluating whether a regulation on Second Amendment rights is constitutional, *Bruen* instructs courts to use the following standard:

> When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct.  The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation.  Only then may a court conclude that the individual's conduct falls outside the Second Amendment's 'unqualified command.'

*Id*. at 17, 142 S.Ct. 2111.

Since *Bruen*, the Sixth Circuit has not directly answered the question of whether the blanket prohibition of firearm possession by felons is consistent with the Nation's historical tradition of firearm regulation.  *See United States v. Johnson*, 95 F.4th 404, 416 (6th Cir. 2024) (citing *United States v. Bowers*, 2024 WL 366247 (6th Cir. January 31, 2024)).  But various district courts, including judges within this district, have applied the *Bruen* test and determined that section 922(g)(1), as applied to dangerous felons like Smith, is consistent with the Nation's

historical tradition of firearm regulation.  For example, in *United States v. Goins*, 647 F. Supp. 3d 538 (E.D. Ky. 2022), the defendant sought to dismiss his section 922(g)(1) charge, which was based on predicate felony convictions for driving under the influence, committing a DUI with a suspended license, possession of a controlled substance, and possession of marijuana. After cataloguing parallel historical laws, the court found that section 922(g)(1), as applied to Goins, was consistent with historical regulations supporting Congress's power to disarm those it renders dangerous.  *Id*. at 548-54.  And as Magistrate Judge Ingram pointed out, the undersigned recently reached the same conclusion in *United States v. Wilkinson*, 2024 WL 1506825 (E.D. Ky. Apr. 8, 2024).[2]  Beyond courts within this circuit, the Supreme Court has twice implied that felon firearm dispossession statutes are constitutional without directly answering that question.  *See United States v. Rahimi*, 144 S. Ct. 1889 (2024); *District of Columbia v. Heller*, 554 U.S. 570, 626 (2008).

As Magistrate Judge Ingram noted, the parties did not address whether "whether the plain text protects [Smith's] . . . course of conduct" under *Bruen*.  But even assuming it does, Smith's claim still fails at the second step because Section 922(g)(1) "has long withstood judicial scrutiny" as a constitutional criminal offense proscribed by Congress.  *Wilkinson*, 2024 WL 1506825, at *3.  Smith—whose criminal history is violent and extensive—falls squarely in the class of people that Congress lawfully and deliberately chose to exclude from being able to possess a firearm.  This Court will not depart from its own precedent regarding the provision's constitutionality, despite Smith's invitation.

---

[2]      *See also United States v. Atkins*, 2024 WL 3316992, at *1 (E.D. Ky. July 5, 2024).

## III.

The Court declines to issue a Certificate of Appealability for any of the claims asserted by Smith. *See* Rule 11 of the Rules Governing § 2255 Proceedings; 28 U.S.C. § 2253(c)(1)(B). A Certificate of Appealability may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To warrant a grant of the certificate, the movant must show that reasonable jurists could debate whether the motion should have been resolved differently or that the issues involved "deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Reasonable jurists would not debate the Court's conclusions regarding Smith's claims. His Fourth Amendment claims are not cognizable, and each instance of alleged ineffective assistance lacks merit. His attorney did not perform deficiently by failing to challenge the legality of the warrantless vehicle search performed conducted pursuant to the automobile exception to the Fourth Amendment. Smith's claim of not being properly advised regarding his criminal history fails because his plea agreement and his sworn statements during the change-of-plea hearing refute this assertion. Smith was similarly advised by the Court of the rights he would waive by entering a guilty plea rather than proceed to trial. But with this knowledge, he voluntarily chose to enter a guilty plea pursuant to his written plea agreement.

Smith has failed to demonstrate how his attorney's alleged unpreparedness for his sentencing hearing created any prejudice. Further, he has not shown a viable *Brady* violation. The United States relied upon evidence from a warrantless search pursuant to the automobile exception of the Fourth Amendment rather that any undisclosed warrant the government might have acquired before the search.

- 10 -

Finally, based on case law that has developed after *Bruen*, *supra*, (and contrary to the United States Magistrate Judge's recommendation), the undersigned concludes that reasonable jurists would not reach a different conclusion regarding Smith's Second Amendment claim. While one court within the Sixth Circuit has determined that Section 922(g)(1) violates the Second Amendment (*see United States v. Williams*, 2024 WL 731932 (E.D. Mich. Feb. 22, 2024)), the undersigned concludes that this decision is an outliner and should not be given weight in reaching the decision of whether a Certificate of Appealability should issue, notwithstanding the low standard for certification.

## IV.

Based on the foregoing analysis and discussion, it is hereby

**ORDERED** as follows:

1.      Except as noted paragraph 4 below, the Recommended Disposition of United States Magistrate Judge Hanly A. Ingram [Record No. 65] is **ADOPTED** and **INCORPORATED** here by reference.

2.      Defendant/Movant Eyron Smith's motion [Record No. 39] and his supplementary motion [Record No. 49] filed pursuant to 28 U.S.C. § 2255 are **DENIED**.

3.      The claims raised in this collateral proceeding are **DISMISSED**, with prejudice, and **STRICKEN** from the docket.

4.      A Certificate of Appealability will not issue regarding any claim raised by Smith in this collateral proceeding.

Dated: July 23, 2024.

Danny C. Reeves, Chief Judge
United States District Court
Eastern District of Kentucky